# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

**CIVIL ACTION NO. 09-385-DLB**

**DONNA KAY CLAYBORN**                                              **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an unfavorable final decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' cross-motions for summary judgment, will **affirm** the Commissioner's decision because it is supported by substantial evidence and the Commissioner applied the correct legal criteria.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Donna Kay Clayborn first filed an application for supplemental security income (SSI) on December 6, 2005 alleging a disability onset date of November 22, 2005. (Tr. 16, 65). Her claim was initially denied on March 28, 2006 and upon reconsideration on July 11, 2006. (Tr. 37, 42). Plaintiff then requested a hearing, which took place on April 19, 2007. (Tr. 46, 539). The ALJ issued an unfavorable decision on June 27, 2007, and the Appeals Council denied Plaintiff's request for review and for reopening on September 14, 2007. (Tr. 5, 16, 26).

1

Plaintiff appealed to the U.S. District Court for the Eastern District of Kentucky. Judge G. Wix Unthank reversed and remanded the action to the Commissioner for further consideration. (Tr. 581). In his Memorandum Opinion remanding the case, Judge Unthank found that "[t]he ALJ erred in evaluating Clayborn's mental status," which resulted in a hypothetical question to the vocational expert (VE) that "did not fairly characterize Clayborn's mental condition." (Tr. 591-92).

After remand, a hearing was held on March 26, 2009. (Tr. 1342). The hearing not only addressed the Plaintiff's mental status, as directed by the district court, but also considered new evidence that had been submitted, which required reassessment of Plaintiff's residual functional capacity (RFC). (Tr. 557, 1344-45). Plaintiff had also filed a subsequent application for SSI on June 26, 2007—after the first was denied, but before it was remanded—which had been denied initially and on reconsideration. (Tr. 557, 604). Finding the applications duplicative, the ALJ adjudicated both in an unfavorable decision, issued July 20, 2009. (Tr. 557, 570).

## II. DISCUSSION

### A. OVERVIEW OF THE PROCESS

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.*

2

Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

**B.    THE ALJ'S DETERMINATION**

In determining disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant still performs substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listings of Impairments; Step Four, whether the claimant can still perform past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy which the claimant can perform. 20 C.F.R. § 416.920; *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing 20 C.F.R. § 404.1520). "The burden of proof is on the claimant throughout the first four steps of this process to prove that [she] is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (internal citations omitted).

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 6, 2005, her first application date. (Tr. 559). At Step Two, the ALJ

determined that Plaintiff's following impairments are "severe": degenerative disc and joint conditions of the lumbar spine, herniation at C5-6, left carpal tunnel syndrome, borderline intellectual functioning, post traumatic stress disorder, and depressive disorder. (Tr. 559). At Step Three, the ALJ determined that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the impairments in the List of Impairments. (Tr. 560).

At Step Four, the ALJ determined that, based on the entirety of the record, Plaintiff has the RFC to perform light work, subject to both exertional and nonexertional limitations. (Tr. 562). Specifically, the ALJ concluded that Plaintiff:

> can perform no uninterrupted sitting or standing for longer than 30 minutes; she can perform no more than occasional bending, stooping, climbing, crouching, crawling, or overhead motions with either upper extremity; she can perform more than frequent fine or gross manipulations with the non dominant left upper extremity; she is moderately limited in her ability to understand, remember, and carry out detailed instruction and is capable of performing simple, one to two step instructions; she is moderately limited in her ability to interact with the general public, respond appropriately in changes in the work setting, and maintain attention and concentration; she would benefit from a low stress work environment with no production or quota work.

(Tr. 562). Based on this RFC, the ALJ determined that Plaintiff is unable to perform her past relevant work as a caregiver because "the mental requirements of this work exceed the claimant's mental residual functional capacity." (Tr. 568). Finally, at Step Five the ALJ found that, based on the VE's testimony, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 568). Consequently, the ALJ determined that Plaintiff has not been under a disability as defined by the Social Security Act since December 6, 2005, her first application date. (Tr. 569).

4

C.    ANALYSIS

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ improperly rejected restrictions assessed by her treating physician, Dr. Hudson, and failed to give good reasons for doing so. (Doc. # 9 at 1-2). Second, Plaintiff contends that the ALJ did not follow the district court's remand instructions because the mental restrictions he provided to the VE were less restrictive than those assessed by any of the sources who expressed an opinion concerning her mental condition. (Doc. # 9 at 1). Third, because of these errors, the VE relied on an inaccurate hypothetical and, consequently, the Commissioner failed to carry his burden at Step Five of showing that Plaintiff is not disabled. (Doc. # 9 at 2). Each argument will be addressed in turn.

1.    **The ALJ was permitted to reject restrictions assessed by the treating physician, Dr. Hudson, and gave good reasons for doing so.**

Plaintiff first argues that the ALJ improperly rejected the restrictions assessed by the treating physician, Dr. Hudson.[1] (Doc. # 9-1 at 7). Under the "treating physician rule," the opinions of physicians who have treated Plaintiff receive controlling weight if they are: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). But "[w]hen the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and the extent of the treatment relationship; the supportability and consistency of

---

[1] The parties do not dispute that Dr. Hudson is a "treating physician," as that term is defined in 20 C.F.R. § 416.902.

the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544). Even where the treating physician's opinion is not controlling, there remains a rebuttable presumption "that the opinion of a treating physician is entitled to great deference." *Id.* However, "[t]reating physicians' opinions are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Jones* 336 F.3d at 477). And in the end, "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Id.* (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

Dr. Hudson completed a medical assessment of Plaintiff's ability to perform work related activities in December 2008. (Tr. 1319-21). He concluded that Plaintiff could occasionally lift 3-5 pounds; stand, walk, or sit for ten minutes at a time for 1-2 hours; had no ability to climb, balance, stoop, crouch, kneel, or crawl; was limited in reaching, handling, feeling, pushing, and pulling; and was restricted from heights, moving machinery, temperature extremes, chemicals, fumes, and humidity. (Tr. 1319-20).

The ALJ decided "not [to] accord great weight" to Dr. Hudson's opinion. (Tr. 566). The ALJ was permitted to not give the treating physician's opinion controlling weight because it was inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); *Wilson*, 378 F.3d at 544. State agency physicians Carlos Hernandez and Doug Croce reviewed Plaintiff's medical records in 2006 and determined that she could frequently lift and carry 25 pounds and occasionally lift and carry 50 pounds. (Tr. 454, 463). They also found that Plaintiff could stand, walk, and sit with normal breaks for about 6 hours in an 8-hour workday; was not limited in her ability to push or pull; and should avoid

6

concentrated exposure to vibration. (Tr. 454, 457, 463, 466). Nearly two years later, in January 2008, state agency physician Robert Brown reached the same conclusions when he reviewed Plaintiff's medical records, with the sole additional limitation that Plaintiff should avoid workplace hazards such as machinery and heights. (Tr. 756, 759, 762). These findings by the state agency physicians were inconsistent with Dr. Hudson's restrictions.

Though the ALJ did not give great weight to Dr. Hudson's treating opinion, he did not completely reject it. But he also declined to adopt the state agency physicians' recommendations in whole. (Tr. 566). Instead, the ALJ incorporated elements of the assessments made by Drs. Hernandez, Croce, Brown, and Hudson in his RFC. For example, the ALJ specifically rejected the state agency physicians' assessments that Plaintiff could perform medium exertional activity, and instead found that she could only perform light work with a series of restrictions.[2] Further, though Dr. Hudson found that Plaintiff could only sit and stand for up to 10 minutes at a time, and the state agency physicians found that Plaintiff could sit and stand with normal breaks for 6 hours in an 8-hour workday, the ALJ determined that Plaintiff could not sit or stand for any longer than 30 minutes at a time. (Tr. 562).

Given the inconsistencies between Dr. Hudson's and the state agency physicians' assessments, the ALJ's decision not to give great weight to Dr. Hudson's assessment was supported by substantial evidence.

---

[2] The regulations define "light" and "medium" work. 20 C.F.R. § 416.967.

Where, as here, the ALJ elects not to give controlling weight to a treating physician's opinion, the regulations require the ALJ to provide "good reasons" for this decision. 20 C.F.R. § 416.927(d)(2). The reasons must be based on the evidence in the record "and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p). This is a procedural safeguard that "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* Additionally this requirement helps "'claimants understand the disposition of their cases,' particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

As discussed *supra* Part II(C)(1), the ALJ did not completely dismiss Dr. Hudson's assessment, but instead declined to give it controlling weight. The ALJ's RFC indicates that he considered and balanced Dr. Hudson's opinion against the other evidence in the record. For example, notwithstanding the state agency physicians' assessments to the contrary, the ALJ apparently gave some weight to Dr. Hudson's assessment in restricting Plaintiff to jobs that did not require any more than 30 minutes of uninterrupted standing or sitting. The ALJ also rejected the state agency physicians' determination that the Plaintiff could perform medium exertional activity and instead found that Plaintiff could only perform light work, with a series of restrictions.

The ALJ provided good reasons for why he did not adopt all the treating physician's assessed restrictions. Specifically, the ALJ stated that Dr. Hudson's restrictions were

8

"overstated and patently inconsistent with [Plaintiff's] documented activities of daily living." (Tr. 566).

First, the ALJ explained that Dr. Hudson's restriction assessment was "overstated" because its "extreme limitations" were "not supported by any appropriate clinical or . . . objective findings of mild to moderate cervical and lumbar conditions without nerve root or cord impingement." (Tr. 566). Further, the evidence demonstrated that Plaintiff's "treatment has all been conservative in nature with no referrals for surgery or other aggressive measures." (Tr. 566). The ALJ concluded that Plaintiff's "clinical and diagnostic examinations have been relatively unremarkable with no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged." (Tr. 566). In short, the ALJ, as required, explained that he believed that Dr. Hudson's assessment overstated Plaintiff's restrictions and identified specific evidence in the record to support this conclusion.

The ALJ also found Dr. Hudson's assessed restrictions inconsistent with Plaintiff's daily activities and provided evidence to support this conclusion. (Tr. 566). For example, Dr. Hudson restricted Plaintiff to uninterrupted sitting for up to 10 minutes. But at her most recent hearing, when the ALJ asked Plaintiff how long she could sit, she laughed and responded "10 minutes"; at the time, Plaintiff had already been seated for about 40 minutes. (Tr. 566). The ALJ also observed that Plaintiff performed her occupation of caregiver for 17 years, during which time she was being treated for the same conditions that she now alleges. (Tr. 567). He also noted that Plaintiff maintained that she stopped working only when the individual she cared for passed away, rather than as a result of a physical or mental impairment. (Tr. 567). Additionally, Plaintiff reported that she does "her

9

own cooking, cleaning, does laundry twice a week, grocery shops once per month, and watches television, and takes care of things around the house" and "was treated as recently as March 2007 for back pain after working in her garden." (Tr. 561). The ALJ determined that "[t]hese activities show a greater functional ability than alleged and illustrate the claimant's tendency to overstate her limitations." (Tr. 561). In explaining that he believed Plaintiff's daily activities are inconsistent with Dr. Hudson's restrictions, the ALJ provided good reasons for his decision not to accord the treating physician's opinion great weight.

> **2. The ALJ's hypothetical was accurate and did not violate the district court's instructions on remand.**

Plaintiff also argues that the ALJ failed to follow the district court's instructions on remand. Specifically, Plaintiff claims that the ALJ relied on vocational testimony that was less restrictive than any of the sources who expressed an opinion about Plaintiff's mental condition. (Doc. # 9 at 1). The ALJ may rely on a VE's testimony in response to a hypothetical question as substantial evidence, "but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

> Here, the ALJ included the following mental restrictions in his hypothetical to the VE:
>
> Assume in addition. . . that the claimant is moderately limited in such areas as understanding, remembering and carrying out detailed instructions, with what I will conclude she's capable of performing simple one and two-step instructions. The claimant is moderately limited in her ability to maintain concentration and attention, interacting appropriately with the general public and responding appropriately to changes in work settings. The claimant would also benefit from a low stress work environment, I will eliminate any production rate or quota work.

(Tr. 1369-70). The VE concluded that there were regional and national jobs available even with Plaintiff's mental and physical restrictions. (Tr. 1371). Though the ALJ purported to put "great weight" in the review of Plaintiff's medical records by the state agency physicians, Drs. Ross and Sillers (Tr. 567), Plaintiff maintains that the mental restrictions in the hypothetical did not reflect their assessments. (Doc. # 9-1 at 6-7). This argument is without merit.

First, Plaintiff correctly observes that the hypothetical did not include Dr. Ross's assessment that Plaintiff was moderately restricted in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. (Doc. # 9-1 at 7). In this respect, Dr. Ross's analysis differed from Dr. Sillers's. After reviewing the available medical records, Dr. Sillers concluded that Plaintiff was not significantly limited in this area. (Tr. 448). That the ALJ did not include this restriction in his hypothetical indicates that he adopted Dr. Sillers's, rather than Dr. Ross's, assessment of Plaintiff's ability to maintain a schedule and be punctual. The ALJ's decision, therefore, does not suffer from the same flaw previously identified in the district court's decision remanding the matter, which was that "*all* of the mental health professionals who expressed an opinion concerning Clayborn's mental condition identified more severe mental limitations than those found by the ALJ." (Tr. 594) (emphasis added).

Plaintiff also contends that the hypothetical did not include Dr. Sillers's opinion that she could only maintain concentration for two-hour segments. However, the hypothetical did accurately portray this mental impairment by stating that Plaintiff "is moderately limited in her ability to maintain concentration and attention." (Tr. 1370). The Social Security

11

Administration's Program Operations Manual System (POMS) DI § 24510.63(B)(2) defines "moderately limited" as indicating that "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." It also instructs the reviewing physician to describe the degree and extent of the limitation in a later section of the RFC form. *Id.* Dr. Sillers's statement that Plaintiff was limited to maintaining "concentration and attention for two hour segments over an eight hour period" was, therefore, merely a description of his assessment that Plaintiff was "moderately limited" in this area. If anything, the ALJ's hypothetical indicating that Plaintiff's ability to maintain concentration was "impaired," was more restrictive than Dr. Sillers's specific assessment that Plaintiff could only maintain concentration for two hour segments over an eight-hour period. This is particularly true in light of Dr. Sillers's finding that Plaintiff was not significantly limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 448-49). Although the hypothetical did not use the same language as Dr. Sillers, its assessment accurately reflected Plaintiff's mental restrictions.

Further, that the hypothetical did not include all the limitations proposed in each physician's opinion does not render it deficient in evaluating disability. "The hypothetical question need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." *Delgado v. Comm'r of Soc. Sec.*, 30 F.App'x 542, 548 (6th Cir. 2002). Here, the ALJ properly performed his role as the trier of fact in resolving conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In this capacity, the ALJ considered evidence in addition to objective medical evidence,

such as prescribed treatment, daily activities, efforts to work, and statements about symptoms. 20 C.F.R. § 416.929(a). Thus, the ALJ looked to Plaintiff's "ability to perform her activities of daily living, sporadic use of prescribed medications, and lack of mental health treatment" to determine that she "does not warrant greater restrictions" than those he assessed. (Tr. 567).

   **3.** **Because the ALJ's hypothetical was accurate, the VE's testimony was substantial evidence and the Commissioner carried his burden at Step Five.**

At the fifth and final step, the burden shifts to the Commissioner to establish that given Plaintiff's RFC, age, education, and work experience, work exists in significant numbers in the national economy. 20 C.F.R. §§ 416.912(g), 416.960(c); *Preslar*, 14 F.3d at 1110.

Plaintiff argues that the Commissioner failed to satisfy this burden because the hypothetical on which the ALJ relied failed to accurately reflect her impairments. (Doc. # 9 at 2). Specifically, Plaintiff alleges that the hypothetical was deficient because it did not contain the proper mental restrictions and the restrictions assessed by the treating physician, Dr. Hudson. (Doc. # 9 at 1-2). Because the Court previously determined that the hypothetical accurately reflected Plaintiff's mental restrictions, and the ALJ properly addressed the treating physician's assessment, the Court also finds that the ALJ properly relied on the VE's testimony. *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994).

## III. CONCLUSION

Substantial evidence supports the ALJ's RFC determination and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

13

**IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 9) is **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 12) is **GRANTED**; and

4. A separate Judgment affirming this decision will be entered contemporaneously herewith.

This 17th day of December, 2010.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-09-385-MOO.wpd